371 B.R. 412 (2007)
In re JZ L.L.C., Debtor.
Diamond Z Trailer, Inc., Appellant,
v.
JZ L.L.C., Appellee.
BAP No. ID-07-1011-KMoR. Bankruptcy No. 01-03545-TLM.
United States Bankruptcy Appellate Panel of the Ninth Circuit.
Submitted Without Oral Argument on May 23, 2007.
Filed June 18, 2007.
*413 *414 Michael Christian, Marcus, Christian & Hardee, LLP, Boise, ID, for Diamond Z Trailer, Inc.
Randal J. French, Bauer & French, Boise, ID, for JZ, L.L.C.
Before: KLEIN, MONTALI, and RIBLET,[*] Bankruptcy Judges.

OPINION
KLEIN, Bankruptcy Judge.
We confront the puzzle of the status of an executory contract that was neither assumed nor rejected during a chapter 11 case in which there was a confirmed plan that did not involve transfers of property of the estate or creation of new entities. We conclude that the "ride through" doctrine developed under the former Bankruptcy Act retains vitality in chapter 11 cases when the debtor continues operating and does not change form.
After a chapter 11 case was closed, the reorganized debtor sued in state court to enforce a license that it had granted prepetition regarding the use of its manufacturing technology. The state court declined to act without a bankruptcy court ruling that the license, which had been neither assumed nor rejected during the chapter 11 case, remained in effect. The bankruptcy court ruled that the license contract survives under the "ride through" doctrine, that the debtor has standing to enforce the contract because all property of the estate vested in the debtor on confirmation, and that the reorganized debtor should not be judicially estopped. We AFFIRM.

FACTS
In 1998, JZ L.L.C., dba Zehr Manufacturing ("JZ"), executed a Licensing Agreement with Diamond Z Trailer, Inc. ("Diamond Z"), which the parties agree is an executory contract.
JZ licensed Diamond Z to manufacture, promote, and sell the "Zehr HG 7000" horizontal grinder on an exclusive basis for five years, with two nonexclusive five-year extensions.
*415 The Licensing Agreement also contained a noncompetition clause prohibiting JZ from manufacturing and distributing the Zehr HG 7000 and preventing Diamond Z from developing, manufacturing, distributing, or selling rotogrinders and horizontal grinders except the Zehr HG 7000.
Diamond Z negotiated with JZ to acquire JZ's technology and inventory before, during, and after JZ's chapter 11 case that commenced in November 2001 and closed in April 2003.
JZ's bankruptcy schedules, disclosure statement, and plan of reorganization did not disclose the license, either as an asset or as an executory contract. Nor did JZ reveal that it had, and was continuing to have, negotiations with Diamond Z regarding the sale of its various rights and assets.
Diamond Z had actual knowledge of JZ's chapter 11 case despite not being scheduled or listed as a party to an executory contract. It did nothing to inform the court or the creditors of the situation. Nor did Diamond Z ask the court under 11 U.S.C. § 365(d)(2) to order JZ to determine within a specified time whether to assume or reject the Licensing Agreement.
JZ's chapter 11 plan did not contain a provision assuming or rejecting all executory contracts not previously dealt with. The plan was a simple reorganization in which JZ retained the property of the estate and did not change legal form. No property was transferred. There was no merger or consolidation.
The order confirming JZ's chapter 11 plan, which provided for 100 percent payment to creditors to be financed through future operations, was entered on January 16, 2003. The case was closed on April 14, 2003.
After the fifth anniversary of the Licensing Agreement in 2003, the license became nonexclusive.
No agreement having been reached despite years of effort, JZ sued Diamond Z in Idaho state court on October 4, 2004 (JZ L.L.C. v. Diamond Z Trailer, Inc., No. CV-2004-10005), seeking a declaratory judgment that the Licensing Agreement was still in effect, an injunction, and damages arising from Diamond Z's manufacture of grinders in breach of the Licensing Agreement.
Diamond Z admitted it began producing its own horizontal grinder in June 2003 but asserted JZ lacks standing and should be judicially estopped from enforcing the Licensing Agreement because JZ omitted it from the schedules.
The state court deferred trial until after the bankruptcy court ruled on the bankruptcy issues raised by Diamond Z.
On September 20, 2006, the bankruptcy court reopened the JZ chapter 11 case and entertained JZ's Motion for Order Confirming Ride Through of Executory Contract  Licensing Agreement as a contested matter. Diamond Z contended that both the Licensing Agreement and the subsequent cause of action regarding that agreement remain property of JZ's bankruptcy estate as to which JZ lacks standing because they were not disclosed in JZ's bankruptcy schedules, disclosure statement, or plan of reorganization. Diamond Z also argued that JZ was judicially estopped from bringing the state court action.
The bankruptcy court ruled that: (1) JZ has standing; (2) despite the lack of disclosure, the Licensing Agreement "rode through" JZ's chapter 11 case and remained binding as between the original parties; (3) that the cause of action was not property of the estate because it accrued *416 at Diamond Z's breach in June 2003 after the chapter 11 case was closed; and (4) that, while judicial estoppel appeared to be inappropriate under the facts, the ultimate determination belonged to the state court. An order granting JZ's motion was entered on January 12, 2007.
This timely appeal ensued.

JURISDICTION
The bankruptcy court had jurisdiction via 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 158(a)(1).

ISSUES
(1) Whether JZ has standing to enforce an unscheduled executory contract.
(2) "Whether the undisclosed Licensing Agreement "rode through" JZ's bankruptcy.
(3) Whether the state court cause of action remains property of the bankruptcy estate.
(4) Whether JZ should be judicially estopped from prosecuting the state court cause of action.

STANDARDS OF REVIEW
We review findings of fact for clear error and issues of law de novo. Litton Loan Serv'g, LP v. Garvida (In re Garvida), 347 B.R. 697, 703 (9th Cir. BAP 2006). Decisions whether to invoke judicial estoppel are reviewed for abuse of discretion. Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001).

DISCUSSION
After dealing with the foundational problem of the obligation to prepare complete schedules, we explain why the chapter 11 debtor has post-bankruptcy standing that a chapter 7 debtor lacks and why the "ride through" doctrine applies here, whereupon the other issues resolve themselves.[1]
Context requires that we acknowledge the existence of a brooding presence looming over this appeal. Although there is no merit, for reasons we shall explain, to JZ's view that executory contracts need not be scheduled, there is also no question that Diamond Z, having negotiated with JZ during and after the chapter 11 case with full knowledge of the case and without informing the court or other creditors, is in poor position to display the "clean hands" necessary to invoke equity in order to exploit JZ's omission. The confirmed full payment plan, moreover, also makes it difficult to identify a victim who is complaining. Diamond Z does not speak for the creditors. Its protest that funds that should be directed to creditors are being used to sue Diamond Z is too incongruous to be persuasive, coming from one who could have revealed the Licensing Agreement to the court and the creditors on whose behalf it now tries to protest. We think Diamond Z doth protest too much.

I
The parties debate whether an executory contract is property of the estate as if that question is relevant to the preparation of schedules and to whether the Licensing Agreement was required to be scheduled. It is not relevant to either.
JZ was required to file schedules of assets and liabilities, a schedule of executory contracts and unexpired leases, and a statement of financial affairs, "prepared as *417 prescribed by the appropriate Official Forms." Fed. R. Bankr.P. 1007(a).
Official Form 6, Schedule A ("Real Property"), requires the debtor to list "all real property in which the debtor has any legal, equitable, or future interest." All means all.
Official Form 6, Schedule B ("Personal Property"), requires the debtor to list "all personal property of the debtor of whatever kind." All means all.
Each of those schedules instructs that executory contracts and unexpired leases be listed on Official Form 6, Schedule G ("Executory Contracts and Unexpired Leases"), which requires listing of "all executory contracts and all unexpired leases of real or personal property" to include timeshare interests. All still means all.
It is settled that the debtor has a duty to prepare these bankruptcy schedules and statements "carefully, completely, and accurately" and bears the risk of nondisclosure. Cusano v. Klein, 264 F.3d 936, 946-49 (9th Civ.2001), quoting In re Mohring 142 B.R. 389, 394 (Bankr.E.D.Cal. 1992), aff'd mem., 153 B.R. 601 (9th Cir. BAP 1993), aff'd mem., 24 F.3d 247 (9th Cir.1994); Hay v. First Interstate Bank of Kalispell, N.A., 978 F.2d 555, 557 (9th Cir.1992) (chapter 11 debtor, but not creditors, estopped from prosecuting omitted cause of action).
Every contract to which the debtor is party is encompassed by the scheduling obligation. A contract is either in the asset/liability category or in the executory contract category. For example, a contract that obliges a counterparty to pay the debtor $10,000 per month for 10 years but as to which the debtor has no remaining duties is an asset and is not executory. To be sure, there may be perplexing questions of characterization when it comes to characterizing a contract as asset, liability, or executory. Answering such questions may require careful study of the particular contract and, in the end, may entail some guesswork. Nevertheless, every contract is required to appear somewhere on the schedules.
The assertion that only property of the estate need be scheduled is wrong. The concept of "property of the estate" is a fact-based legal conclusion to be decided by the court after the facts are reviewed by interested parties. The schedules require full, candid, and complete reporting of the facts, so that interested parties can be in a position to argue for or against the legal conclusion. A debtor who lists only those items that the debtor believes are "property of the estate" improperly truncates the creditor/trustee review process and usurps the role of the court.
Thus, regardless of whether the law is unsettled on the question whether and when a particular executory contract becomes property of the estate, an executory contract still must be scheduled. In short, JZ has no conceivable excuse for not scheduling the Licensing Agreement.
Even though JZ has two strikes against it, Diamond Z's election to refrain from disclosing the Licensing Agreement to the court or creditors in the chapter 11 case leaves Diamond Z in the grandstand and not on the playing field.

II
Diamond Z's argument that JZ lacks standing because the unscheduled license is still property of the estate misconstrues the Bankruptcy Code, even if JZ unjustifiably omitted it.

A
The authority of a debtor over property of the estate after a trustee ceases to serve depends on whether the case is in chapter *418 7, on the one hand, or chapters 11, 12, or 13, on the other hand.
Although chapter 7 debtors usually do lack standing because they have no authority to control property of the estate at any time after the case is filed, chapter 11 debtors, acting in the capacity of debtor in possession performing the duties of the trustee, do have authority to control property of the estate before plan confirmation. 11 U.S.C. §§ 1101(1) & 1107.
Moreover, chapter 11 (and 12 and 13) debtors also have such authority after plan confirmation. Section 1141(b) vests all of the property of the estate, scheduled and unscheduled, in the debtor upon plan confirmation, unless the court or plan provides otherwise. 11 U.S.C. §§ 1141(b); see also, id. §§ 1227(b) & 1327(b). Hence, JZ, as a revested chapter 11 debtor, has standing to sue on causes of action that are property of the estate, subject, as will be seen, to equitable constraints.
JZ's standing is consistent with the general rule in 11 U.S.C. § 554(d) that property of the estate that is not scheduled and not otherwise administered before a case is closed is not abandoned to the debtor at the time of closing, but rather remains property of the estate  forever. 11 U.S.C. § 554(d); Cheng v. K & S Diversified Invs., Inc. (In re Cheng), 308 B.R. 448, 461 (9th Cir. BAP 2004), aff'd, 160 Fed.Appx. 644 (9th Cir.2005). Section 554(d) codifies the omitted property rule that dates back to the Supreme Court's decision in First Nat'l Bank v. Lasater, 196 U.S. 115, 119, 25 S.Ct. 206, 49 L.Ed. 408 (1905).[2]
The unscheduled property rule complements the rule that scheduled property not theretofore administered is "abandoned to the debtor and administered" as of the close of the case, unless the court orders otherwise. 11 U.S.C. § 554(c). Thus, upon closing and in the absence of a court order to the contrary, property of the estate that was scheduled is abandoned to the debtor and ceases to be property of the estate, but, under § 554(d), unscheduled property of the estate remains property of the estate after the case is closed.
Section 554(d) prompts the question of who controls property of the estate remaining after the case is closed. In chapter 7, the answer is nobody. The trustee ceases to serve when the case closes. See 11 U.S.C. § 350(a). Since no Bankruptcy Code provision authorizes a chapter 7 debtor to control property of the estate that remains in such status by virtue of § 554(d), the debtor lacks standing, and nobody is left to take the helm. In short, the chapter 7 estate after closing is a rudderless ship.
A closed chapter 7 case may be reopened and a trustee appointed when it becomes appropriate to deal with property of the estate. 11 U.S.C. § 350(b); Fed. R. Bankr.P. 5010.[3] This typically occurs *419 when undisclosed property surfaces or a state court realizes that a cause of action is being prosecuted by a chapter 7 debtor who is not the real party in interest. E.g., Wood v. Household Fin. Corp., 341 B.R. 770, 773-74 (W.D.Wash.2006); Arkison v. Ethan Allen, Inc., 160 Wash.2d 535, 160 P.3d 13, 16-17 (Wash.2007) (en banc).
The § 554(d) problem is not so acute in chapter 11 (end 12 and 13) cases because there is no rudderless ship. Regardless of whether scheduled, all property of the estate vests in the debtor upon plan confirmation: "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. §§ 1141(b).[4] This was a material change from the predecessor provision that applied to chapter XI of the former Bankruptcy Act. Cases under former chapter XI did present the rudderless ship problem because only "property dealt with" in a plan or arrangement revested. Bankruptcy Act § 70(i), 11 U.S.C. § 110(i) (1976).[5]
Under the Bankruptcy Code, since vesting occurs at the time of plan confirmation, which is always before a chapter 11 case closes, and applies to "all of the property of the estate," including unscheduled property, the § 554(d) problem does not generate a lacuna in which there is nobody with authority to control property of the estate. The effect of presumptively vesting all of the property of the estate in the chapter 11 (or 12, or 13) debtor upon plan confirmation means that decisions holding that chapter 7 debtors lacks standing to sue on a claim owned by the estate are limited to chapter 7 cases and to those chapter 11 (and 12 and 13) cases in which the plan or the order confirming the plan alters the § 1141(b) (or § 1227(b) or § 1327(b)) vesting rule. When property of the estate has been vested in the debtor, it cannot be said that the chapter 11 debtor has no standing after the case is closed. It follows that JZ has authority to control estate property and, hence, has standing.
The Ninth Circuit decision in Cusano does not compel a contrary conclusion regarding § 1141(b). Cusano, which imposes a result consistent with prior circuit precedent imposing judicial estoppel in the same chapter 11 unscheduled property situation, does not squarely hold that undisclosed assets do not vest in the debtor pursuant § 1141(b). Several reasons confirm that Cusano is not a § 1141(b) decision. First, although § 1141(b) was mentioned at the beginning of the Cusano analysis, it disappeared from the ensuing discussion. That mention of § 1141(b) was incorrect, stating that such vesting is *420 "unique to Chapter 11" when there are identical provisions at §§ 1227(b) and 1327(b). Cusano, 264 F.3d at 945. Nor did the court of appeals grapple with the implications of § 1141(b). None of the three decisions cited in Cusano dicta for the proposition that unscheduled property did not "revert" involves chapter 11 or § 1141(b).[6] No direct holding was made regarding § 1141(b), there is no legal reasoning regarding § 1141(b), and the question is too important to the structure of bankruptcy to be regarded as having been inadvertently or indirectly decided.
As we suggest in the next section, Cusano, when construed in light of Ninth Circuit precedent, is a judicial estoppel decision that reaches a result fully consistent with circuit precedent.

B
Section 1141(b) vesting does not mean that a debtor necessarily has unfettered control over property of the estate. It neither authorizes nor condones mischief, such as omitting to schedule property. For that reason, equitable constraints may be imposed in order to preserve the integrity of the `system. In principle, the full panoply of equitable remedies, from constructive trust through equitable and judicial estoppel, are available to assure that debtors do not overreach.
In Hay, the Ninth Circuit invoked judicial estoppel to block a revested chapter 11 debtor from prosecuting a cause of action that should have been disclosed before plan confirmation. Hay, 978 F.2d at 557. Consistent with the distinction between misbehaving debtor and victim creditors emphasized in Lasater,[7] it reasoned that the omitted cause of action belonged to the creditors and could be prosecuted by the creditors, who were the real economic victims of the omission. Id.
Judicial estoppel is a flexible equitable doctrine based on the estoppel of inconsistent positions in which a litigant who has obtained one advantage through the court by taking a particular position is not thereafter permitted to obtain a different and inconsistent advantage by taking a different position. New Hampshire v. Maine, 532 U.S. 742, 749-51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); Hamilton, 270 F.3d at 782-85; Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600-01 (9th Cir.1996); Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990); Alary Corp. v. Sims (In re Assoc'd Vintage Group, Inc.), 283 B.R. 549, 566 (9th Cir. BAP 2002).
In the case of omitted assets in bankruptcy, the initial position is that there is *421 no asset, the later inconsistent position is that there is an asset. The debtor need only have gained some advantage through the court's acceptance of the initial position, such as plan confirmation or grant of discharge. Since the existence of assets and their value is integral to plan confirmation, the implied representation that an asset does not exist (i.e., the omitted asset) or is of low value (i.e., the materially undervalued asset) may be sufficiently material that the court cannot in good conscience permit the debtor to take a contrary position in subsequent litigation. Hay, 978 F.2d at 557; cf. Cusano, 264 F.3d at 946-49.
Each situation, however, needs to be evaluated on its own facts, with remedies fashioned in a way that does not punish innocent bystanders. As the Ninth Circuit implicitly recognized in Hay, the danger inherent in estopping the debtor is that one may inappropriately punish creditors. If the debtor is not permitted to liquidate property that remains property of the estate, then creditors are potentially doubly punished: first, when the asset is omitted; and, second, when there is an estoppel from pursuing the asset. One should not become so angry at a debtor that a creditor is taken oat and shot.
In response to this concern, the Ninth Circuit took care to note in Hay that the creditors might be authorized to prosecute the undisclosed cause of action as to which the debtor was estopped. Hay, 978 F.2d at 557. Another possibility by way of equitable remedy would be to condition permission for the debtor to prosecute an omitted cause of action on the proceeds being held in constructive trust for creditors. If the terms of the confirmed plan (as here) are such that the proceeds would, in any event, go to creditors, then there may be no need for estoppel. See Robert F. Dugas, Note, Honing a Blunt Instrument: Refining the Use of Judicial Estoppel in Bankruptcy Nondisclosure Cases, 59 VAND. L.REV. 205, 249-52 (2006).
As noted, Cusano was necessarily decided in light of existing circuit precedent, including Hay and Hamilton, and is best understood as achieving a judicial estoppel consistent with the prior precedent of Hay. In relevant part, the court of appeals ruled that the district court did not abuse discretion when it refused to proceed with unscheduled prepetition causes of action unless the bankruptcy court revisited the chapter 11 case and then dismissed as to those causes of action after the bankruptcy court refused (in a decision that appears to be an estoppel and that was not appealed) to afford belated relief to the debtor. The debtor was plainly overreaching, having, in the words of the district court, "vastly undervalued" the underlying songrights at $1,521 in connection with chapter 11 plan confirmation that, in light of the debtor's later lawsuit, appeared to have cheated creditors in a manner that could bring discredit upon the courts. Nevertheless, the court of appeals struck a balance by permitting the debtor to pursue causes of action that accrued postpetition, thereby reversing the district court to that extent. Cusano, 264 F.3d at 946-49.
Although not explicitly a judicial estoppel decision, the Cusano result is consistent with Hay and Hamilton and makes sense only as a judicial estoppel decision. Moreover, the Cusano panel was not privileged to ignore the precedent established by Hay and Hamilton, and we are bound by the agglomeration of precedent, which obliges us to harmonize all the cases.
The harmonized rule is straightforward: the debtor in whom all property of the estate has been vested by virtue of § 1141(d) may, in appropriate circumstances, be subjected to equitable constraints with respect to such property.

*422 III
The bankruptcy court ruled that the "ride through" doctrine developed under the Bankruptcy Act of 1898 survives and applies to an executory contract that is neither assumed nor rejected under 11 U.S.C. § 365(a) during the course of a chapter 11 case in which a plan is confirmed.[8] The First, Second, and Fifth Circuits have reached the same conclusion. So do we.

A
When the Bankruptcy Code is viewed through the prism of §§ 365(a), 365(d)(1), 365(d)(2), and 1123(b)(2), it contemplates three alternatives with respect to executory contracts in chapter 11 cases: assume, reject, or no action.
Section 365(a) provides that the trustee "may assume or reject" an executory contract. 11 U.S.C. § 365(a) (emphasis supplied).[9] This language is permissive, not mandatory. By not saying "must either assume or reject," the Code leaves open the "no-action" possibility of neither assuming nor rejecting an executory contract.
Similarly, assumption or rejection of an executory contract through a chapter 11 plan is permissive ("plan may provide"), not mandatory. 11 U.S.C. § 1123(b)(2).[10] This also leaves open the "no-action" possibility and affords room for "ride through."
In all chapters except chapter 7, an executory contract "may" be assumed or rejected at any time before plan confirmation. A party to such a contract is entitled to seek an earlier decision by requesting that the court fix an earlier deadline to a determination to be made, but the court is not required to grant such a request. 11 U.S.C. § 365(d)(2); Fed. R. Bankr.P. 6006(b).[11] As with §§ 365(a) and *423 1123(b)(2), the language of § 365(d)(2) is permissive  the operative verb phrases being "may assume or reject" and "may order the trustee to determine"  in a manner that leaves room for "ride through."
The flexibility preserved for chapters 9, 11, 12 and 13 with respect to executory contracts emerges in even greater relief when contrasted with the more rigid regime imposed on chapter 7 cases by § 365(d)(1): "if the trustee does not assume or reject an executory contract . . ., then such contract . . . is deemed rejected." 11 U.S.C. § 365(d)(1).[12]
A similarly restrictive regime applies in all chapters to unexpired leases of nonresidential real property under which the debtor is lessee: "if the trustee does not assume or reject" an unexpired lease, then it is "deemed rejected.[13]
What is significant for our purposes about the more rigid provisions pertaining to chapter 7 and to leases of nonresidential real property, is that they illuminate the greater flexibility that Congress afforded in chapter 11 (and 9, 12, and 13) cases with respect to executory contracts. An executory contract that is not assumed in a chapter 11 case is not "deemed rejected." As a matter of straightforward statutory construction, it follows that some other alternative, i.e. "ride through," must be available.[14]

B
The "ride through" or "pass through" doctrine was well established under the former Bankruptcy Act of 1898. It applied to all contracts and not merely those contracts that were executory. The failure affirmatively to assume an executory contract did not result in rejection, and the contract continued in effect. E.g., Federal's Inc. v. Edmonton Inv. Co., 555 F.2d 577, 579 (6th Cir.1977); Smith v. Hill, 317 F.2d 539, 542 n. 6 (9th Cir.1963) (chapter XI); Consol. Gas, Elec. Light, & Power Co. v. United Rys. & Elec. Co., 85 F.2d *424 799, 805 (4th Cir.1936) (§ 77B) ("Consolidated Gas"); 8 JAMES WM. MOORE ET AL., COLLIER ON BANKRUPTCY § 3.15[6] (14th ed.1978) ("contract can only be rejected by affirmative action . . . Unless so rejected, the contract continues in effect") ("COLLIER 14th ed.").
The classic statement of the "ride through" doctrine appears in Consolidated Gas: where there is no breach or default in an executory contract as of the commencement of the case, the contract remains in force unless it is rejected and, if not rejected, "passes with other property to the reorganized" debtor. Consol. Gas, 85 F.2d at 805.
Permitting a contract to remain effective as between the contracting parties by way of "ride through" was a practical way of dealing with situations in which the debtor would continue as an operating entity. But it was of little help when one preferred to structure a reorganization in different ways. The obstacles and lack of flexibility posed by the need either to leave unexpired leases and executory contracts intact as between the original contracting parties or to obtain consent from the counterparties, led to the creation under the former Bankruptcy Act of a general ability to assume and assign a contract or unexpired lease. This new authority to assume and assign without a counterparty's permission facilitated reorganization structures that used another entity as a vehicle to receive some or all of the business. 8 COLLIER 14th ed., § 3.15[6].
The statutory authority to assume or assign contracts was carried forward into the 1978 Bankruptcy Code at § 365. The question, then, is whether the "ride through" doctrine, which actually stated the underlying default rule, survived. We hold that it did survive.

C
A key rule of construction for the 1978 Bankruptcy Code is that doctrines developed under the former Bankruptcy Act are presumed to continue to apply under the Bankruptcy Code except to the extent Congress indicated a contrary intent. See, e.g., Kelly v. Robinson, 479 U.S. 36, 47, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). Nothing in the Bankruptcy Code or its legislative history suggests that Congress was altering the basic approach of assumption, rejection, and "ride-through" as alternatives.
Decisions under the Bankruptcy Code confirm the continued vitality of the "ride through" alternative. See, e.g., NLRB v. Bildisco & Bildisco, 465 U.S. 513, 546 n. 12, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (Brennan, J.) ("Bildisco") (if neither accepted nor rejected, "it will `ride through' the bankruptcy proceeding and be binding on the debtor even after a discharge is granted").
The First, Second, and Fifth Circuits have recognized the "ride through" alternative. Stumpf v. McGee (In re O'Connor), 258 F.3d 392, 404 (5th Cir.2001); Boston Post Rd. Ltd. P'ship v. FDIC (In re Boston Post Rd. Ltd. P'ship), 21 F.3d 477, 484 (2d Cir.1994); Pub. Serv. Co. of N.H. v. N.H. Elec. Coop., Inc. (In re Pub. Serv. Co. of N.H.), 884 F.2d 11, 14-15 (1st Cir.1989).
In our own circuit, the question has been examined in a well-reasoned bankruptcy court opinion. In re Hernandez, 287 B.R. 795, 799-803 (Bankr.D.Ariz.2002) (Hollowell, J.).
The Collier treatise similarly opines that an executory contract that is neither assumed nor rejected survives in cases other than in chapter 7, noting that the utility of the doctrine may be limited to situations in which the debtor continues as an operating entity. 3 ALAN N. RESNICK & HENRY J. *425 SOMMER, EDS., COLLIER ON BANKRUPTCY ¶ 365.04[2][d] (15th ed. rev.2007) ("COLLIER 15th ed.").
Another reason to conclude that the "ride through" alternative survives is that not all contracts are executory, and the boundary between executory and nonexecutory is vague. Contracts that are not executory do not need to be assumed in order to remain in effect and typically are viewed as assets or liabilities in bankruptcy. The Bankruptcy Code provisions dealing with assumption and assignment  e.g., 11 U.S.C. §§ 365 and 1123(b)  are addressed to executory contracts and unexpired leases and make no mention of contracts that are not executory.
The absence of a bright-line boundary between executory and non-executory contracts creates a zone of uncertainty that would be a trap for the unwary without the "ride through" alternative. At best, the concepts of executory and non-executory share the same boundary as the difference between contract breaches that are material and not material  easy to say, but hard to apply.
The standard understanding of the term "executory contract" in the Bankruptcy Code is the so-called "Countryman definition" that turns on the dichotomy of material or not material: whether the contract requires further performance from each party, the nonperformance of which would be a material breach. E.g., Bildisco, 465 U.S. at 522-23 n. 6, 104 S.Ct. 1188; Vern Countryman, Executory Contracts in Bankruptcy: Understanding "Rejection," 57 MINN. L.REV. 439, 446 (1973) ("A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other"); 3 COLLIER 15th ed. ¶ 365.02[1].
The Countryman definition is law of this circuit. Unsecured Creditors' Committee v. Southmark Corp. (In re Robert L. Helms Constr. & Dev. Co.), 139 F.3d 702, 705 (9th Cir.1998) (en banc).
Under the Countryman definition, a contract on which the debtor owes no further duties is not executory. A nonexclusive license is an example of a contract that would not be executory if there is no performance (including performance of negative covenant) remaining for the licensor that could lead to material breach. Another example is a contract for sale of goods where the debtor fully performed when it delivered the goods and is merely collecting installment payments.
The statutory lacuna for contracts that are not executory is conveniently filled by the "ride though" doctrine. As with other settled doctrines, Congress presumably regarded the "ride through" doctrine as so well established that it did not merit particularized treatment in the Bankruptcy Code.
If "ride through" is available for contracts that are not executory, then the question becomes whether "ride through" is also an alternative in the case of executory contracts. As previously explained, straightforward statutory construction of § 365 and related provisions is consonant with continuing vitality of the "ride through" alternative.

IV
Diamond Z perceives error in the holding that the state law cause of action is not property of the estate because it did not accrue until the contract was breached, which did not occur until after the chapter 11 case was closed.
Diamond Z's theory is that if the state law cause of action accrued prior to plan *426 confirmation and was not disclosed, then it remains as property of the estate by virtue of § 554(d), which Diamond Z assumes would pull the carpet from under JZ's standing.
Our conclusion that JZ has standing by virtue of § 1141(b) vesting to control property that remains as property of the estate after the chapter 11 case was closed renders moot any debate over whether the subject cause of action is such property.

V
Diamond Z argues that JZ's nondisclosure of the license judicially estops JZ from prosecuting the state court action. But Diamond Z does not attempt to show its hands are clean.
The bankruptcy court cogently explained why it perceived no basis to impose judicial estoppel against JZ in the matter pending before it. We perceive no abuse of discretion in not estopping JZ from proceeding in bankruptcy court.
As to whether a different result should pertain in the state court, the bankruptcy court correctly noted that the decision to apply estoppel belongs to the court in which the estoppel would occur. That ruling was correct.

CONCLUSION
JZ had standing to prosecute the cause of action based on the undisclosed Licensing Agreement to the extent that it remains in a status of property of the estate because all of the property of the estate vested in JZ pursuant to § 1141(b) upon confirmation of its chapter 11 plan. The contract that was neither assumed nor rejected during the bankruptcy case "rode through" the bankruptcy. The debate over when the cause of action accrued is moot for purposes of bankruptcy analysis. The court correctly declined to impose judicial estoppel against JZ in the matter before it and correctly deferred to the state court as to the question of judicial estoppel in state court.
AFFIRMED.
NOTES
[*] Hon. Robin L. Riblet, U.S. Bankruptcy Judge for the Central District of California, sitting by designation.
[1] Although this case arose before, and is not governed by, the provisions of Pub.L. No. 109-8 ("BAPCPA"), BAPCPA would not necessitate material changes in our analysis. United States Code citations are to the 2000 edition, unless otherwise indicated.
[2] The Lasater Court reasoned:

It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up, immediately thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it. If the claim was of value (as certainly this claim was according to the judgment below) it was something to which the creditors were entitled, and this bankrupt could not, by withholding knowledge of its existence, obtain a release from his debts and still assert title to the property.
Lasater, 196 U.S. at 119, 25 S.Ct. 206.
[3] Section 350(b) provides:

(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.
11 U.S.C. § 350(b).
Rule 5010 implements § 350(b):
A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code. In a chapter 7, 12, or 13 case a trustee shall not be appointed by the United States trustee unless the court determines that a trustee is necessary to protect the interests of creditors and the debtor or to insure efficient administration of the estate.
Fed. R. Bankr.P. 5010.
[4] The provision is repeated in identical language in chanters 12 and 13. 11 U.S.C. §§ 1227(b), 1327(b). Revesting is not relevant to chapter 9 because there is no property of the estate in chapter 9, nor does § 554 apply in chapter 9. 11 U.S.C. §§ 901(a) & 902(1).
[5] Bankruptcy Act § 70(i) provided:

(i) Upon the confirmation of an arrangement or plan, or at such later time as may be provided by the arrangement or plan, or in the order confirming the arrangement or plan, the title to the property dealt with shall revest in the bankrupt or debtor, or vest in such other person as may be provided by the arrangement or plan or in the order confirming the arrangement or plan.
Bankruptcy Act § 70(i), 11 U.S.C. § 110(i) (1976).
[6] Without attempting to explain how the assertion meshes with § 1141(b), Cusano asserts, citing three cases, that unscheduled property "did not revert to Cusano." Cusano, 264 F.3d at 945-46. Two chapter 7 cases are cited, where the assertion is correct for the reasons described above. Hutchins v. IRS, 67 F.3d 40, 43 (3d Cir.1995) (ch. 7); Vreugdenhill v. Navistar Int'l Transp. Co., 950 F.2d 524, 526 (8th Cir.1991) (ch. 7). The third case was a decision under Bankruptcy Act chapter XI to which different statutory language ("property dealt with [in the plan] shall revest in the bankrupt or debtor," not "all of the property of the estate") applied  the omitted property was not "dealt with" in the relevant plan. Stein v. United Artists Corp., 691 F.2d 885, 890 (9th Cir.1982) (Bankruptcy Act § 70(i), 11 U.S.C. § 110(i) (1976)).
[7] Lasater's emphasis on the importance of the creditors' rights in an omitted cause of action warrants repetition:

If the claim was of value (as certainly this claim was according to the judgment below) it was something to which the creditors were entitled, and this bankrupt could not, by withholding knowledge of its existence, obtain a release from his debts and still assert title to the property.
Lasater, 196 U.S. at 119, 25 S.Ct. 206.
[8] Although we accept the parties' agreement that the Licensing Agreement is an executory contract, the question is not free from doubt. Nonexclusive licenses are not necessarily executory. Otto Preminger Films, Ltd. v. Qintex Entm't, Inc. (In re Qintex Entm't, Inc.), 950 F.2d 1492, 1495-96 (9th Cir.1991). Whether the contract is executory depends on whether material unperformed obligations remain for both parties. If not executory, then the license, which requires Diamond Z to pay money to JZ, is merely a JZ asset as to which assumption or rejection would be irrelevant.
[9] Section 365(a) provides:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
11 U.S.C. § 365(a) (emphasis supplied).
[10] Section 1123(b)(2) provides:

(b) Subject to subsection (a) of this section, a plan may  . . . (2) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section; 11 U.S.C. § 1123(b)(2) (emphasis supplied). The same provision also applies in chapters 9, 12, and 13. 11 U.S.C. §§ 901(a) (incorporating § 1123(b)), 1222(b)(6) & 1322(b)(7).
[11] Section 365 (d)(2) provides:

(d)(2) In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.
11 U.S.C. § 365(d)(2) (emphasis supplied).
Rule 6006(b) provides a procedure to a party to the request contemplated by § 365(d)(2):
(b) Proceeding to require trustee to act. A proceeding by a party to an executory contract or unexpired lease in a chapter 9 municipality case, chapter 11 reorganization case, chapter 12 family farmer's debt adjustment case, or chapter 13 individual's debt adjustment case, to require the trustee, debtor in possession, or debtor to determine whether to assume or reject the contract or lease is governed by Rule 9014.
Fed. R. Bankr.P. 6006(b).
[12] Section 365(d)(1) provides:

(d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.
11 U.S.C. § 365(d)(1).
[13] Although § 365(d)(4) was restructured by BAPCPA, the above-quoted operative language survived:

(d)(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.
11 U.S.C. § 365(d)(4) (emphasis supplied).
BAPCPA amended § 365(d)(4) as follows: (d)(4)(A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of [times omitted and subparagraph (B) time extension provision omitted].
11 U.S.C. § 365(d)(4) (Supp.2005) (emphasis supplied).
[14] We express no view regarding the meaning and consequences of "deemed rejected" executory contracts in chapter 7. Arguably, "deemed rejected" and "actually rejected" are separate concepts.