

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1267-SFL |
| MINON MILLER, | Bk. No. 2:13-bk-35116-RK |
| Debtor. | |
| MINON MILLER, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| EDWARD GILLIAM; VIC RODRIGUEZ, | |
| Appellees. | |

Submitted Without Oral Argument
on February 21, 2019

Filed – March 11, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

Honorable Robert N. Kwan, Bankruptcy Judge, Presiding

————

Appearances:    Appellant Minon Miller, pro se, on brief; Vic Rodriguez on brief for appellees.

————

Before: SPRAKER, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Minon Miller appeals from an order granting in part Edward Gilliam's motion for sanctions under Rule 9011.[1] By way of the motion, Gilliam sought to recover $77,200 in attorney's fees he incurred obtaining an order dismissing Miller's sixth bankruptcy case based on bad faith and improper purpose. The bankruptcy court awarded $50,875 in fees and disallowed the rest as unreasonable.

Miller contends that the bankruptcy court erred in granting the motion because Gilliam lacked standing. Miller is correct. Gilliam's claim for fees was property of his chapter 7 bankruptcy estate. Because Gilliam never scheduled this claim as an asset in his bankruptcy case, it continued to be estate property when his bankruptcy case was closed. As a result, only his chapter 7 trustee had standing to pursue recovery of the fees.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

Because the bankruptcy court should have denied the motion for lack of standing, we REVERSE.

## FACTS

Miller and Gilliam have been litigating against each other for over ten years. The litigation originally arose from a 2007 real property lease, with a purchase option, covering Gilliam's residence in Carson, California. As a result of the litigation, the Orange County Superior Court entered judgment against Miller for roughly $53,000.00. The state court later entered a separate judgment for the same amount against Miller's wholly-owned tax return preparation business, Nonim, LLC.

There have been numerous additional actions in state court, some brought by Gilliam, and some brought by Miller. Each party also has filed multiple voluntary bankruptcy petitions. Gilliam commenced three chapter 13 bankruptcy cases in 2008. He also filed a chapter 7 bankruptcy petition in 2017. The chapter 7 trustee in that case filed a no asset report, and the bankruptcy court entered a discharge order in Gilliam's favor on July 3, 2017.

For her part, Miller has commenced six bankruptcy cases. The only one relevant to this appeal is the sixth and final case, which she commenced in 2013. Shortly after commencement, Gilliam moved to dismiss this case on the ground that the bankruptcy was filed in bad faith and solely for the purpose of impeding him from collecting on his

judgments. Gilliam additionally alleged that Miller had grossly understated her income in her bankruptcy schedules. After holding a trial on the motion to dismiss, the bankruptcy court ruled in favor of Gilliam and entered an order dismissing the case in September 2015.

Miller appealed the dismissal order to this Panel. *Miller v. Gilliam (In re Miller)*, BAP No. CC-15-1328-KiTaKu, 2016 WL 5957270, at *1 (9th Cir. BAP Oct. 13, 2016). We affirmed, holding that the bankruptcy court's dismissal of the bankruptcy case on the ground of bad faith was not an abuse of discretion. *Id.* at *13. Miller then appealed our decision to the Ninth Circuit Court of Appeals, which also affirmed. *Miller v. Gilliam (In re Miller)*, 708 F. App'x 396 (9th Cir. 2017).

On October 29, 2015, while Miller's appeal to this Panel was pending, Gilliam filed a motion for sanctions under § 105 and Rule 9011. According to Gilliam, Miller's latest bankruptcy filing was one in a series of abusive and improper bad faith bankruptcy filings Miller had initiated as part of her campaign to defeat his judgment collection efforts. Gilliam also relied on Miller's understatement of her gross income, as the bankruptcy court had found when it dismissed her bankruptcy case.

On November 16, 2015, Miller responded to Gilliam's sanctions motion. She once again denied that she had filed her sixth bankruptcy petition for an improper purpose or that she had misstated her gross income. After receiving Gilliam's sanctions motion and Miller's response,

4

the bankruptcy court decided to hold the sanctions motion in abeyance pending the disposition of Miller's appeals from the case dismissal order. On May 2, 2018, after the Court of Appeals issued its mandate, the bankruptcy court reset the matter for hearing on May 30, 2018.

Shortly thereafter, Miller filed a request for judicial notice in support of her opposition to the sanctions motion. In relevant part, Miller asked the bankruptcy court to take judicial notice of the filing of Gilliam's 2017 bankruptcy case and Gilliam's receipt of a discharge therein. She further pointed out that Gilliam's bankruptcy schedules did not list his pending sanctions motion or his claim for attorney's fees under Rule 9011. Consequently, Miller reasoned, Gilliam's entitlement (if any) to recover his fees remained property of his bankruptcy estate, and he lacked standing to pursue them on behalf of his estate.

Gilliam filed a declaration in response to Miller's request for judicial notice. Gilliam noted that he had listed one of his judgments against Miller in his amended bankruptcy schedules.[2] He also noted that his amended schedules mentioned Miller's latest bankruptcy filing. But Gilliam's amended schedules did not list his claim against Miller for attorney's fees as an asset in his bankruptcy case. In fact, Gilliam stated in his schedules

_____

[2] Gilliam has not disputed that his original schedules, filed in March 2017, did not list any of his claims against Miller. Gilliam did not file his amended schedules until August 2017, after he received his discharge and after his chapter trustee issued a no asset report.

only that Miller's 2013 bankruptcy case prevented him from collecting on his judgment. This was not true, inasmuch as Miller's case already had been ordered dismissed as a bad faith and improper bankruptcy filing.

The bankruptcy court heard Gilliam's sanctions motion on May 30, 2018. The bankruptcy court acknowledged that Gilliam did not schedule his claim for attorney's fees against Miller. But the court was not concerned that this presented an obstacle to Gilliam's sanctions motion. The court reasoned that Gilliam's entitlement to fees really belonged to his attorney, Victor Rodriguez, since Rodriguez ultimately was the one who needed to be paid his fees. At the same time, the court seemed to be aware that Rodriguez held only a claim for fees against Gilliam, not Miller, and that Rodriguez's claim against Gilliam had been discharged in Gilliam's no-asset bankruptcy case. The court explained that, to the extent Gilliam already had paid Rodriguez, Gilliam could directly recover the fees from Miller, and to the extent Gilliam never paid the fees and his obligations to Rodriguez had been discharged, Gilliam only could recover them if he agreed to pay them to Rodriguez going forward. The court then took the matter under submission.

After the hearing, Gilliam filed a supplemental declaration. In it, he represented that, before he filed his 2017 bankruptcy case, he had paid Rodriguez $25,678 of the roughly $78,000 Rodriguez billed for prosecuting the motion to dismiss Miller's sixth bankruptcy case. As for the fees Gilliam

6

had not paid before he received his discharge in his 2017 bankruptcy case, Gilliam agreed to pay any awarded fees in excess of the $25,678 to Rodriguez.

The bankruptcy court then issued on September 21, 2018, a memorandum decision and a separate order granting in part Gilliam's sanctions motion. The bankruptcy court found that Miller's sixth bankruptcy petition violated Rule 9011 for much the same reason it had dismissed the case: because Miller filed it in bad faith and for an improper purpose. The court also relied on Miller's misstatement of her gross income. The bankruptcy court allowed $50,875 in fees and disallowed the remaining fees requested as excessive or as improperly presented in a "lumped" format. The court also was concerned that counsel charged Gilliam for clerical tasks. The court ordered $25,678 paid to Gilliam and the remaining balance of allowed fees of $25,197 paid to Rodriguez. Miller timely appealed.

## JURISDICTION

Subject to the standing analysis set forth below, the bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did Gilliam have standing to prosecute his Rule 9011 sanctions motion?

## STANDARD OF REVIEW

Standing is a jurisdictional issue, which we review de novo. *Palmdale Hills Prop., LLC v. Lehman Comm. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 873 (9th Cir. 2011). When we review an issue under the de novo standard, we consider it anew, without any deference to the bankruptcy court's decision. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014)

## DISCUSSION

Miller insists that Gilliam lacked standing to seek recovery from her of the fees he incurred prosecuting his motion to dismiss Miller's sixth bankruptcy case. According to Miller, as a result of the chapter 7 case Gilliam commenced in 2017, his claim for attorney's fees became an asset of his bankruptcy estate. Because Gilliam never listed the claim on his bankruptcy schedules, Miller reasons that the claim continued to be property of the estate even after Gilliam received his discharge and his case was closed. Consequently, Miller contends that only Gilliam's chapter 7 trustee had the right to prosecute his Rule 9011 sanctions motion to recover the fees.

We agree. Because all of the subject attorney's fees were incurred

8

before Gilliam commenced his 2017 bankruptcy case, his claim (if any) to recover the fees constituted a prepetition asset that became property of his bankruptcy estate upon the filing of his petition. The Bankruptcy Code broadly defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1); *see also Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001). This includes all litigation claims and causes of action existing as of the petition date. *Cusano*, 264 F.3d at 945 (citing *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 708 (9th Cir. 1986)).

Unless otherwise ordered, scheduled assets are deemed abandoned to the debtor upon the closing of a chapter 7 bankruptcy case if not otherwise administered by the chapter 7 trustee. § 554(c); *see also Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ L.L.C.)*, 371 B.R. 412, 418 (9th Cir. BAP 2007). However, when estate property is not scheduled and not administered by the chapter 7 trustee, it is not deemed abandoned. Rather, such undisclosed property remains property of the estate even after the bankruptcy case is closed. § 554(d); *In re JZ L.L.C.*, 371 B.R. at 418. Thus, Gilliam's claim against Miller for fees remained property of his bankruptcy estate even after his case was closed because he failed to list the claim in his bankruptcy schedules.

Debtors lack standing to prosecute claims belonging to their chapter 7 bankruptcy estate. Only the chapter 7 trustee may pursue such claims on

9

behalf of the estate. *See Spirtos v. One San Bernardino Cty. Super. Ct. Case*, 443 F.3d 1172, 1175-76 (9th Cir. 2006); *Cusano,* 264 F.3d at 945; *In re JZ L.L.C.,* 371 B.R. at 418-19.

On appeal, Gilliam has not disputed that his fee entitlement became property of his bankruptcy estate when he commenced his 2017 bankruptcy case. He does claim that his fee entitlement against Miller was adequately scheduled. He points to the fact he mentioned Miller's bankruptcy case in his schedules. But he did not list the bankruptcy case or the fee entitlement as an asset. He merely mentioned the case as an impediment to collecting on a different asset: one of his judgments against Miller. This did not constitute proper or adequate scheduling of the fee entitlement. *See Cusano*, 264 F.3d 936, 946-47.

Therefore, the claim for attorney's fees was an unscheduled asset that remained property of Gilliam's chapter 7 estate. The bankruptcy court erred by permitting Gilliam to prosecute his sanctions motion to conclusion (over Miller's standing objection) when the fees he sought to recover belonged to his bankruptcy estate.

At the final sanctions motion hearing, the bankruptcy court expressed the view that the ultimate right to payment of fees belonged to Gilliam's attorney Rodriguez rather than to Gilliam. This view apparently led the bankruptcy court to conclude that the fee entitlement was not an asset of Gilliam's bankruptcy estate. This was incorrect. With certain

10

exceptions not raised or addressed below, all legal and equitable interests of the debtor become property of the estate. § 541(a)(1). Gilliam was the movant in both the motion to dismiss and the subsequent sanctions motion, not his attorney. Gilliam's bankruptcy, and the failure to disclose his attorney's fee claim, divested him of standing to pursue that recovery.

Finally, there is nothing in the record to suggest that Rodriguez had any right to recover his fees directly from Miller. To the contrary, the record reflects a standard fees for services attorney-client relationship between Gilliam and Rodriguez under which only Gilliam was indebted to Rodriguez for the services he provided to Gilliam. More importantly, it was Gilliam who sought an award of attorney's fees, not Rodriguez. Gilliam lacks standing to recover property of his 2017 bankruptcy estate. Additionally, it is unclear how Gilliam could assert any right that Rodriquez might have to the direct payment of his unpaid attorney's fees.[3] On this record, we cannot uphold the bankruptcy court's view of Gilliam's fee entitlement as if it actually belonged to Rodriguez.

---

[3] Even if we were to accept the bankruptcy court's reasoning that Rodriguez was the real party in interest in the motion for sanctions, that would apply only to his unpaid fees. Gilliam previously paid $25,678 to Rodriguez. We are not aware of any legal theory that would justify payment of this amount to Rodriguez. Indisputably, Miller's reimbursement of legal fees Gilliam already paid was owed to Gilliam or, more accurately, his bankruptcy estate.

**CONCLUSION**

For the reasons set forth above, we REVERSE the bankruptcy court's Rule 9011 sanctions order.