**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NV-17-1200-BHTa |
| CAPRIATI CONSTRUCTION CORPORATION, INC., | Bk. No.   2:15-BK-15722-ABL |
| Debtor. | |
| CAPRIATI CONSTRUCTION CORPORATION, INC., | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| SPER, INC., | |
| Appellee. | |

Argued and Submitted on December 1, 2017,
at Las Vegas, Nevada

Filed - March 20, 2018

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable August B. Landis, Bankruptcy Judge, Presiding

Appearances:   Aj Kung argued for appellant Capriati Construction Corporation, Inc.; H. Stan Johnson of Cohen-Johnson, LLC argued for appellee SPER, Inc.

Before:   BRAND, HOULE[2] and TAYLOR, Bankruptcy Judges.

---

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[2]  Hon. Mark D. Houle, Bankruptcy Judge for the Central District of California, sitting by designation.

Reorganized debtor Capriati Construction Corp., Inc. appeals an order denying its motion for contempt against SPER, Inc., for SPER's alleged violations of the automatic stay and discharge and/or plan injunction. Capriati alleged that the fraudulent transfer and alter ego claims SPER was prosecuting in state court against the non-debtor principal of Capriati were property of Capriati's bankruptcy estate or of the reorganized debtor; therefore, SPER's pursuit of those claims prior to confirmation of Capriati's chapter 11[3] plan violated the automatic stay and violated the discharge and/or plan injunction once Capriati's plan was confirmed. Capriati also appeals the court's order denying reconsideration. We VACATE and REMAND.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    The parties**

Capriati is a construction company that historically generated average annual income of $55-$65 million, primarily from public work projects. The recent recession ultimately led Capriati to file for bankruptcy relief. David Rocchio, Sr. is the owner, sole shareholder and person in control of Capriati.

SPER is a corporate entity owned by Susan Frankewich, Esq., through which she conducts her law practice. Frankewich has practiced bankruptcy law for over 30 years. Frankewich was the attorney for Rocchio and his various entities from 2003 to mid 2015. Rocchio did not sign any retention agreements with SPER/Frankewich individually and was not a guarantor for any

---

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

unpaid legal fees owed by his various entities, including Capriati.

**B.  Capriati's bankruptcy filing, the state court action and the chapter 11 plan**

Capriati filed its chapter 11 bankruptcy case on October 7, 2015.  The court subsequently approved Capriati's application to employ Kung & Brown as its bankruptcy counsel.  SPER later filed an unsecured proof of claim for Capriati's unpaid legal fees of $109,459.50.

One week later, SPER, represented by Frankewich, sued Rocchio and his entities in state court for Capriati's unpaid legal fees, alleging breach of contract, monies owed, quantum meruit, misrepresentation, alter ego, and fraudulent transfer.  SPER did not name Capriati as a defendant, but SPER's claims for alter ego and fraudulent transfer alleged that Rocchio (and the other defendants) manipulated and transferred assets and funds between Capriati and themselves to avoid payment of creditors, including SPER.  SPER requested that Rocchio be declared the alter ego of Capriati and be held liable for any judgment.

Rocchio retained Capriati's bankruptcy counsel, Kung & Brown, to file a motion to dismiss the state court action as to all defendants.  Rocchio argued that, because SPER's fraudulent transfer claim alleged that Capriati fraudulently conveyed assets prior to its filing bankruptcy, such claim had to be heard by the bankruptcy court.  In opposition to SPER's later summary judgment motion, Rocchio argued that SPER could not recover Capriati's debt from him or his entities under an alter ego theory, because Capriati had to be named as a necessary and indispensable party

-3-

but could not be due to the bankruptcy stay. Rocchio also argued that, to the extent any alleged transfers from Capriati to Rocchio were avoidable, they would be reclaimed as property of Capriati's bankruptcy estate; thus, SPER was impermissibly seeking recovery against property of the estate.

Kung & Brown thereafter filed a supplement to its employment application, disclosing to the bankruptcy court that the firm had represented Rocchio in the state court action. Kung & Brown asserted that its limited representation of Rocchio and his entities did not create a conflict of interest in Capriati's pending bankruptcy but rather preserved estate assets and prevented further violation of the automatic stay. Kung & Brown maintained that any alleged claims of alter ego and fraudulent transfers by Capriati to Rocchio and his entities were claims belonging to Capriati's bankruptcy estate, and so the firm had to act quickly to ensure that SPER did not usurp estate assets. Both Kung & Brown and Rocchio represented that Rocchio had no adverse interests to the Capriati estate.

Capriati filed various reorganization plans and disclosure statements. SPER was the only party to oppose confirmation of Capriati's third amended plan of reorganization, which ultimately became the confirmed plan ("Plan"). In each of its objections to Capriati's disclosure statements, proposed plans and Plan confirmation, SPER alleged that Capriati was not accounting for avoidable fraudulent transfers involving Capriati, Rocchio, his other entities and his family members. In response to one of SPER's objections, Capriati's financial expert opined that either the transfers alleged by SPER were not avoidable fraudulent

-4-

transfers, or, to the extent that any were avoidable, no benefit existed for the estate and creditors because any amount recovered would not be collectible.  In short, the cost of pursuing such claims exceeded any likely recovery.

After a two-day confirmation trial, at which the bankruptcy court considered SPER's allegations of fraudulent transfers involving Capriati, the court entered an order confirming the Plan.  The Plan provisions relevant here are:

**9.1. Vesting of Assets**.  Subject to the provisions of this Plan and as permitted by Section 1123(a)(5)(B) of the Bankruptcy Code, the Assets, **including the Litigation Claims[4]** and right, title, and interest being assumed by Reorganized Debtor in the assumed Executory Contracts, **shall be transferred to Reorganized Debtor on the Effective Date**.

**9.2. Preservation of Litigation Claims**.  In accordance with Section 1123(b)(3) of the Bankruptcy Code, and except as otherwise expressly provided herein, **all Litigation Claims shall be assigned and transferred to Reorganized Debtor. Reorganized Debtor**, as the successor in interest to Debtor and the Estate, **may and shall have the exclusive right to sue on, settle, or compromise any and all Litigation Claims, including derivative actions existing against Debtor on the Effective Date**.

**9.4. Injunction**. From and after the Effective Date . . . **all entities that have held, currently hold, or may hold a Claim** . . . that is terminated pursuant to the terms of this Plan **are permanently enjoined from** taking any of the following actions on account of any such Claims . . . : (I) **commencing or continuing in any manner any action** or other proceeding **against Reorganized Debtor or its property**[.]

(Emphasis added).

_____

[4] Section 1.1.41 of the Plan defined "Litigation Claims" as "[a]ll rights, claims, torts, liens, liabilities, obligations, actions, causes of action, Avoidance Actions [including under §§ 544, 548, 550 & 551] derivative actions, proceedings, debts, contracts, judgments, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that Debtor or the Estate may have against any Person."

-5-

**C.    Capriati's motion for contempt**

More than a year after SPER was on notice that the fraudulent transfer and alter ego claims alleged in the state court action were property of the estate or of the Reorganized Debtor, SPER filed another amended complaint in the state court action, this time asserting claims against just Rocchio for Capriati's unpaid legal fees, including claims for fraudulent transfer and alter ego. Capriati was not named as a defendant, but SPER alleged that Rocchio had caused Capriati to transfer its assets to him to avoid paying creditors, including SPER. SPER again requested that Rocchio be declared the alter ego of Capriati.

In response, Capriati filed a motion for contempt in the bankruptcy court, seeking sanctions against SPER for its alleged violations of the automatic stay and the discharge and/or Plan injunction ("Contempt Motion"). Capriati argued that SPER's fraudulent transfer and alter ego claims, which alleged only general claims of injury to all creditors of Capriati, were property of the estate that could only be pursued by Capriati and which revested in the Reorganized Debtor upon confirmation; thus, SPER's state court action pursuing those claims after Capriati's bankruptcy filing and prior to Plan confirmation violated the automatic stay under § 362(a)(3) and violated the Plan injunction after confirmation. Capriati requested sanctions against SPER of $25,000 plus attorney's fees.

In opposition, SPER argued that Capriati was judicially estopped from claiming that the fraudulent transfer and alter ego claims were estate assets: Capriati never disclosed any possible avoidance actions against Rocchio in its schedules or statements

-6-

of financial affairs; at no time prior to confirmation did Capriati ever amend its schedules or statements of financial affairs to disclose the fraudulent transfer and alter ego claims; neither the Plan nor confirmation order reserved or disclosed the claims as a "litigation asset" of the estate; the expert report minimized the value of any fraudulent transfer claim; and the approved disclosure statement disavowed the existence of any such claim. Therefore, argued SPER, Capriati could not now assert that the fraudulent transfer and alter ego claims were estate assets, when Capriati had previously and successfully asserted before the bankruptcy court in connection with Plan confirmation that no such claims existed.

Next, SPER argued that Rocchio, a non-debtor, was not protected by the automatic stay or Capriati's discharge. SPER maintained that the claims against Rocchio in the state court action were "direct" claims against him under Nevada law, not derivative corporate claims. SPER argued that at least $1,285,500 in Capriati distributions to Rocchio were recoverable for unsecured creditors, which was more than double what they were getting under the Plan.

In reply, Capriati maintained that it did not list any avoidance actions against Rocchio in its schedules or statements of financial affairs because it never believed that any such claims existed. Moreover, the alleged excessive salary payments to Rocchio were the subject of SPER's many objections and the crux of its objection to Plan confirmation, which SPER fully litigated at the confirmation trial. Capriati maintained that SPER's allegations of fraudulent transfers were without merit or support

-7-

in fact or law; SPER presented no witnesses at the confirmation trial and entered only one document into evidence — Capriati's financial expert's report — which concluded that no viable fraudulent transfer or avoidance actions against Rocchio existed.

At the Contempt Motion hearing, counsel for SPER conceded that SPER had no "direct" claim against Rocchio individually and independent from Capriati, but then argued that SPER had a direct, in personam claim against Rocchio as "transferee" of a fraudulent conveyance. Counsel maintained that such claim did not violate the automatic stay or the Plan injunction, because it was not an action to recover the asset for the benefit of Capriati's estate.

**D.    The bankruptcy court's ruling on the Contempt Motion**

The bankruptcy court first determined that the Contempt Motion failed on the basis of judicial estoppel. The court focused on Capriati's prior statement that it did not believe any fraudulent transfer and alter ego claims against Rocchio existed and was unaware of any such claims. To the extent Capriati believed otherwise, Capriati never disclosed the claims in its bankruptcy papers filed under oath. Thus, because of its failure to disclose and outright denial of the existence of any such claims against Rocchio, the court reasoned that Capriati was judicially estopped from now taking the inconsistent position that such claims were estate assets revested in the Reorganized Debtor upon confirmation of the Plan.

Alternatively, the court held that the Contempt Motion failed because neither the automatic stay nor the discharge injunction applied to Rocchio, a non-debtor Capriati officer and insider. Sections 9.4 and 9.5 of the Plan prohibited post-confirmation and

-8-

post-discharge actions against the Reorganized Debtor or its property but excepted direct liability claims against Capriati's officers and other insiders. The court summarily concluded that SPER's claims for fraudulent transfer and alter ego were "direct" claims against Rocchio individually and therefore not protected by the automatic stay or the discharge and/or Plan injunction.

Finally, the court found that Capriati failed to meet its burden of proving either a willful violation of the automatic stay or the discharge injunction; SPER legitimately believed that its claims in the state court action were against Rocchio individually.

**E.    Capriati's motion for reconsideration**

Capriati timely moved for reconsideration of the Contempt Order. The bankruptcy court denied the motion, determining that Capriati had not presented any grounds for reconsideration.

This timely appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1.    Did the bankruptcy court err by determining that SPER had not willfully violated the automatic stay or the Plan injunction without determining first whether the fraudulent transfer and alter ego claims were either property of the estate or property of the Reorganized Debtor?

2.    Did the bankruptcy court err in determining that SPER had not willfully violated the automatic stay or the Plan injunction and therefore abused its discretion by not holding SPER in contempt?

-9-

3.    Did the bankruptcy court abuse its discretion by invoking judicial estoppel to deny the Contempt Motion?

4.    Did the bankruptcy court abuse its discretion in denying the motion to reconsider?

## IV. STANDARDS OF REVIEW

Determining whether the bankruptcy court applied the correct legal standard is a question of law reviewed de novo. Emmert v. Taggart (In re Taggart), 548 B.R. 275, 286 (9th Cir. BAP 2016). An erroneous view of the law may induce the bankruptcy court to make a clearly erroneous finding of fact. Ozenne v. Bendon (In re Ozenne), 337 B.R. 214, 218 (9th Cir. BAP 2006) (citing Power v. Union Pac. R.R. Co., 655 F.2d 1380, 1382–83 (9th Cir. 1981)).

Whether property is included in a bankruptcy estate is a question of law subject to de novo review. Cisneros v. Kim (In re Kim), 257 B.R. 680, 684 (9th Cir. BAP 2000).

We review for abuse of discretion the bankruptcy court's decision to apply judicial estoppel, or preclusion of inconsistent positions, to the facts of a case. Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001); Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ L.L.C.), 371 B.R. 412, 416 (9th Cir. BAP 2007).

We review for an abuse of discretion the bankruptcy court's decision whether to hold a party in civil contempt. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003); Rediger Inv. Servs. v. H. Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.), 503 B.R. 726, 731 (9th Cir. BAP 2013). The underlying factual findings are reviewed for clear error. In re Dyer, 322 F.3d at 1191; In re H Granados Commc'ns, Inc.,

-10-

503 B.R. at 731-32. A finding is clearly erroneous when it is illogical, implausible or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

We review for an abuse of discretion the bankruptcy court's decision to deny a reconsideration motion under Civil Rule 59. Ybarra v. McDaniel, 656 F.3d 984, 998 (9th Cir. 2011); Cruz v. Stein Strauss Tr. # 1361, PDQ Invs., LLC (In re Cruz), 516 B.R. 594, 601 (9th Cir. BAP 2014).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if it makes factual findings that are illogical, implausible or without support in inferences that may be drawn from the facts in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

**V. DISCUSSION**

**A. The bankruptcy court's failure to determine ownership of the fraudulent transfer and alter ego claims led to error.**

The bankruptcy court denied the Contempt Motion in the first instance based on its determination that judicial estoppel barred the relief sought by Capriati, and second, summarily, on the alternative grounds that the automatic stay and discharge and/or Plan injunction did not apply to preclude SPER's filing and pursuit of its "direct" claims for fraudulent transfer and alter ego against Rocchio, a non-debtor third party and Capriati insider. The bankruptcy court never determined whether the fraudulent transfer and alter ego claims were property of the estate or property of the Reorganized Debtor. This approach puts the cart before the horse. The omission led to the erroneous or

-11-

incomplete finding that SPER's claims for fraudulent transfer and alter ego were exclusively "direct" claims against Rocchio; the record and the law are to the contrary. And this conclusion improperly colored the determinations that followed.

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). A debtor's "causes of action" are "property of the estate." Smith v. Arthur Andersen LLP, 421 F.3d 989, 1002 (9th Cir. 2005) (citing United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.9 (1983)). Thus, the trustee, or in this case the debtor-in-possession, stands in the shoes of the debtor corporation and has standing to bring any suit that the debtor corporation could have instituted had it not filed for bankruptcy relief. Id. The trustee's standing to sue on behalf of the estate is exclusive; a debtor's creditors cannot prosecute such claims belonging to the estate absent abandonment. Estate of Spirtos v. One San Bernardino Cty. Super. Ct., 443 F.3d 1172, 1175 (9th Cir. 2006).

Furthermore, § 1141(b) "vests **all** of the property of the estate, scheduled and unscheduled, in the debtor upon plan confirmation, unless the court or plan provides otherwise." In re JZ L.L.C., 371 B.R. at 418 (emphasis in original). Hence, because of § 1141(b), the general rule under § 554(d) — that property of the estate that is not scheduled and not otherwise administered before the case is closed and is not abandoned to the debtor at the time of closing, but rather remains property of the estate, forever — does not apply. Id. Thus, even undisclosed assets in a chapter 11 case vest in the debtor under § 1141(b), unless the

-12-

plan provides otherwise. Id. at 419. Section 9.1 of the Plan provides that all Litigation Claims, including all known or unknown causes of action, Avoidance Actions and derivative actions, vested in the Reorganized Debtor on the effective date. This is not inconsistent with § 1141(b).

**1. The fraudulent transfer claim**

The crux of SPER's fraudulent transfer claim was Capriati's alleged over-payment of salary to Rocchio, which SPER argued was a transfer in fraud of all creditors and harmful to Capriati. In other words, SPER's complaint alleged a direct injury to Capriati, from which an injury to SPER was derived. "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." Schertz-Cibolo-Universal City, Indep. Sch. Dist. v. Wright (In re Educators Grp. Health Tr.), 25 F.3d 1281, 1284 (5th Cir. 1994).

We conclude that SPER's fraudulent transfer claim asserted in the state court action was property of Capriati's bankruptcy estate by virtue of § 544(b) once Capriati filed its bankruptcy petition, and such claim could only be pursued by Capriati. § 548(a); The Cadle Co. v. Mims (In re Moore), 608 F.3d 253, 261 (5th Cir. 2010) (fraudulent transfer claims become estate property "once bankruptcy is under way" by virtue of trustee's successor rights under § 544(b)); Nat'l Tax Credit Partners, L.P. v. Havlik, 20 F.3d 705, 708-09 (7th Cir. 1994) (same). See also Whiting Pools, Inc., 462 U.S. at 205 ("Section 541(a)(1) is intended to include in the estate any property made available to the estate by

-13-

other provisions of the Bankruptcy Code," which would include property made available through § 544).

We reject SPER's argument that it could pursue a direct claim against Rocchio as the "transferee" of a fraudulent transfer under Nevada law, namely NRS 112.220, which provides for recovery of the value of the asset transferred from the transferee, during the chapter 11 case. That statute does not consider the effect of a corporate debtor's bankruptcy filing and the fact that a prepetition claim for injury to the debtor by an insider's fraudulent transfers is property of the corporate debtor's estate.

**2. The alter ego claim**

Whether the alter ego claim was property of the estate or of the Reorganized Debtor is not as easy to determine. The alter ego doctrine is used to establish the direct liability of a shareholder when that shareholder improperly uses the corporate entity to commit acts which harm the corporation. Here, SPER alleged a traditional veil-piercing (alter ego) claim, whereby a creditor attempts to place liability for a debtor-corporation's obligations on its shareholders.

Whether an alter ego claim is property of the bankruptcy estate depends on two things: (1) whether under state law where the corporate debtor is incorporated, the debtor is permitted to pierce its own corporate veil; and (2) whether the claim is a general one, of the type that could be brought by any creditor of the debtor. Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 132-33 (2d. Cir. 1993); S.I. Acquistion, Inc. v. Eastway Delivery Serv., Inc., 817 F.2d 1142, 1152-53 (5th Cir. 1987); CBS, Inc. v. Folks (In re Folks), 211 B.R. 378, 384, 387 (9th Cir. BAP 1997);

-14-

_Murray v. Miner_, 876 F. Supp. 512, 516 (S.D.N.Y. 1995); _In re Landmark Fence Co._, 424 B.R. 461, 463 (Bankr. C.D. Cal. 2010); _In re Davey Roofing Inc._, 167 B.R. 604, 608 (Bankr. C.D. Cal. 1994). If the answer to both of these questions is yes, then the alter ego claim is property of the estate, belongs to the trustee or debtor-in-possession, and cannot belong to any individual creditor. _In re Folks_, 211 B.R. at 387 (citing _Davey Roofing, Inc._, 167 B.R. at 606). "This rule ensures that all of a debtor's creditors receive equal treatment: otherwise, those who asserted alter ego claims first would obtain payment of the claims in preference to and to the detriment of other creditors, despite having no greater claim on the alter ego's assets." _Murray_, 876 F. Supp. at 516 (internal quotation marks and citation omitted).

Despite SPER's assertion and the bankruptcy court's finding to the contrary, the alter ego claim alleged here was a general, as opposed to a personal or individualized, claim. "A cause of action is personal if the claimant himself is harmed and no other claimant or creditor has an interest in the cause." _In re Folks_, 211 B.R. at 387 (internal quotation marks and citation omitted). "A general claim exists if the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors." _Id._ (internal quotation marks and citation omitted). In other words, if the alter ego claim alleges acts that harmed the financial condition of the corporation as a whole and all creditors equally, such claims are general alter ego claims. _Id._ _See Kalb, Voorhis & Co._, 8 F.3d at 133; _In re Landmark Fence Co._, 424 B.R. at 463-64; _In re Davey_

-15-

Roofing, Inc., 167 B.R. at 608.

SPER's alter ego claim alleging that Rocchio (1) had failed to observe corporate formalities with respect to Capriati, (2) used corporate funds for his own personal use, and (3) had manipulated Capriati's assets and funds to avoid payment of creditors was a general claim because all creditors are affected; no particularized injury to SPER existed that could not be brought by other Capriati creditors harmed by Rocchio's alleged bad acts. Accordingly, the bankruptcy court clearly erred to the extent that it found SPER had a "direct" or personal alter ego claim against Rocchio that was not an asset of the chapter 11 estate.

As for the question of whether Capriati could pierce its own corporate veil, the parties have been operating under the assumption that Nevada alter ego law applies. However, Capriati is a Rhode Island corporation. Thus, as noted above, Rhode Island alter ego law applies.

Rhode Island recognizes the equitable doctrine of alter ego. McFarland v. Brier, 769 A.2d 605, 613 (R.I. 2001) (alter ego doctrine permits creditors of a corporation to reach assets of individual(s) that control the corporation). However, we could not locate any Rhode Island Supreme Court case answering the question of whether a corporation may pierce its own veil.

In any event, the general rule in most (if not all) states is that "alter ego" is not an independent cause of action, but is an equitable remedy — a legal theory or doctrine used to impose liability against the alter ego defendant under another cause of

-16-

action.[5] We could not locate a Rhode Island Supreme Court case stating whether this is the law in Rhode Island, but based on that Court's use of the terms "equitable" and "doctrine" in cases discussing alter ego, we can assume that Rhode Island follows this general rule. See Heflin v. Koszela, 774 A.2d 25, 30 (R.I. 2001) ("To invoke the equitable alter ego doctrine . . . .").

Thus, we question what value SPER's alter ego claim has as a remedy absent the ability to pursue the fraudulent transfer claim.

### 3. SPER violated the automatic stay

The bankruptcy court determined that SPER could not have violated the automatic stay by filing and pursuing its "direct" claims for fraudulent transfer and alter ego against Rocchio individually in the state court action. We do not argue the point that generally a non-debtor is not protected by the automatic stay. However, as we have determined, SPER's fraudulent transfer claim was not a "direct" claim against Rocchio, because it became property of the estate once Capriati filed its bankruptcy case.

The automatic stay continues to protect property of the estate so long as it retains that status. § 362(c)(1). While the automatic stay did not apply to Rocchio, it did apply to claims against property of the estate prior to confirmation under

---

[5] For example, in California "[a] claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural . . . " Hennessey's Tavern, Inc. v. Am. Air Filter Co., 204 Cal. App. 3d 1351, 1359 (1988). "Alter ego is merely a legal theory, or doctrine, employed to make a substantive cause of action applicable to the 'alter ego defendant' where otherwise that claim could only be stated against the corporate entity." Id.

-17-

§ 362(a)(3).[6] As a result, SPER violated the automatic stay when it asserted the fraudulent transfer and related alter ego claims in its state court complaint. And acts in violation of the stay are void, absent an annulment of the stay. SPER cannot rely on those claims for relief either as initially pled or as amended. Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992) (actions taken in violation of the automatic stay are void).

Whether SPER has a post-Plan confirmation "direct" claim is an issue for further consideration, but it must assert such a claim as a new matter after confirmation and without reliance on void assertions during the course of the case. However, SPER's new attempt would remain subject to potentially successful attack based on the discharge and Plan injunction and subject to defenses such as the statute of limitations, as applicable.

Section 362(k) permits the recovery of damages resulting from a stay violation. This subsection, however, applies only to individuals, not corporations. In re H Granados Commc'ns, Inc., 503 B.R. at 733. Nonetheless, a corporation may be entitled to recovery for a stay violation under § 105(a) as a sanction for civil contempt. Id.

To find a party in civil contempt for a stay violation, the threshold inquiry focuses on a finding of "willfulness." Id. (citing In re Dyer, 322 F.3d at 1191). The bankruptcy court must find that: (1) the party knew of the automatic stay; and (2) the

---

[6] Under § 362(a)(3), the automatic stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

-18-

party's actions that violated the stay were intentional. Id. Whether the party exhibited bad faith or had a subjective intent to violate the stay is irrelevant. Id. The movant bears the burden of showing by clear and convincing evidence that the party violated the stay. Id.

SPER has never claimed that it did not receive notice of Capriati's bankruptcy filing. Indeed, it was careful not to include Capriati as a defendant in the state court action, filed just one week after Capriati filed its chapter 11 case. Further, Frankewich, a bankruptcy attorney of over 30 years, is certainly familiar with the rules of the automatic stay and knew or should have known that usurping property of the bankruptcy estate is a willful violation of the automatic stay. Her subjective belief that the claims in the state court action were against Rocchio only and not Capriati makes no difference for purposes here, despite the bankruptcy court's ruling to the contrary. Because the court applied an incorrect legal standard, its finding that SPER had not willfully violated the automatic stay is clearly erroneous. In re Ozenne, 337 B.R. at 218.

The record supported a determination that SPER willfully violated the automatic stay by filing and continuing to pursue the fraudulent transfer claim against Rocchio in the state court action after Capriati filed its bankruptcy case and prior to confirmation of the Plan. Therefore, the bankruptcy court abused its discretion by not holding SPER in contempt.

**4. Whether SPER violated the discharge and/or Plan injunction can be determined on remand.**

Per § 1141(b) and Sections 1.1.41, 9.1, 9.2 and 9.4 of the

-19-

Plan, the fraudulent transfer claim (and maybe the alter ego claim if viable under Rhode Island law and if it was property of the estate) appears to be a "Litigation Asset" that reverted to the Reorganized Debtor upon confirmation of the Plan, gave the Reorganized Debtor exclusive right to sue on, settle or compromise that claim, and permanently enjoined any other parties from commencing or continuing any action regarding that claim. Capriati argues that the bankruptcy court erred by not holding SPER in contempt for willfully violating the Plan injunction and confirmation order, when it was clear that SPER was attempting to take control over claims belonging to the Reorganized Debtor.

The contempt remedy is also available with respect to violations of the discharge injunction under § 105(a). ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006); Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002); In re Taggart, 548 B.R. at 286. The party seeking contempt sanctions has the burden of proving, by clear and convincing evidence, that the alleged contemnor "(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." In re ZiLOG, Inc., 450 F.3d at 1007; Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court."). Knowledge of the injunction is a question of fact that can normally be resolved only after an evidentiary hearing. In re ZiLOG, Inc., 450 F.3d at 1007. However, where the facts are not in dispute, no hearing need be held. Id. at 1007 n.11 (citing In re Dyer, 322 F.3d at 1191-92).

-20-

Here, the bankruptcy court applied the correct legal standard for a willful violation of the discharge or Plan injunction. It is undisputed that SPER knew of the Plan injunction and confirmation order given its objections to Plan confirmation, which were overruled at the confirmation trial, and that SPER continued to pursue the state court action post-confirmation. However, it is not clear on this record whether SPER was aware that the Plan injunction **applied** to its claims against Rocchio for fraudulent transfer and alter ego. The bankruptcy court may need to conduct an evidentiary hearing on remand to make that determination.

**B. We need not decide whether the bankruptcy court abused its discretion by invoking judicial estoppel to deny the Contempt Motion.**

Capriati argues that the bankruptcy court misapplied and grossly over-extended the doctrine of judicial estoppel. We do not fault the court for wanting to apply some sort of equitable doctrine in this case to deny Capriati's request for monetary damages for contempt, which is all it requested. Like the bankruptcy court, we question why a corporate debtor like Capriati would concern itself with a creditor's pursuit of a third party, albeit a corporate insider, in state court. The fairly obvious reason Capriati was seeking monetary damages for contempt in the bankruptcy court was to protect and benefit Rocchio, Capriati's principal and sole shareholder.

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position, either in the same or different actions. Hamilton,

-21-

270 F.3d at 782-83. The court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, "but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." Id. (internal quotation marks and citation omitted).

Although Capriati as a chapter 11 debtor-in-possession and revested debtor had exclusive standing to sue on causes of action that were property of the estate, that right is subject to certain equitable constraints. In re JZ, L.L.C. 371 B.R. at 418; § 1107.[7] As the Panel has noted:

> Section 1141(b) vesting does not mean that a debtor necessarily has unfettered control over property of the estate. It neither authorizes nor condones mischief, such as omitting to schedule property. For that reason, equitable constraints may be imposed in order to preserve the integrity of the system. In principle, the full panoply of equitable remedies, from constructive trust through equitable and judicial estoppel, are available to assure that debtors do not overreach.

In re JZ L.L.C., 371 B.R. at 420. Accordingly, as JZ L.L.C. instructs, the bankruptcy court had discretion to apply an equitable doctrine like judicial estoppel to deny Capriati contempt damages. We simply disagree that applying the doctrine without recognizing that a stay violation occurred and that SPER continues to rely on void claims for relief is appropriate.

On remand, the bankruptcy court may certainly revisit any equitable doctrine it deems appropriate to deny contempt damages

---

[7] Under § 1107(a), the debtor in possession is vested with the rights, powers, and duties of a trustee, including the right to sue and be sued. See § 323(b) (trustee has capacity to sue and be sued).

-22-

to Capriati.

**C. The bankruptcy court abused its discretion in denying the motion to reconsider.**

A motion under Civil Rule 59(e) should not be granted unless the court is presented with newly discovered evidence, committed clear error, or if there is an intervening change of controlling law. 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). Capriati asked the bankruptcy court to reconsider its ruling on the Contempt Motion, arguing that the court had erred when it determined that (1) SPER had a direct claim against Rocchio, (2) that judicial estoppel authorized the court to allow a single creditor to bring postpetition and post-confirmation fraudulent transfer and alter ego claims, which were property of the estate and of the Reorganized Debtor, for the creditor's sole benefit, and that (3) SPER had not willfully violated the automatic stay or Plan injunction. Because we have determined that the court applied incorrect standards of law and made clearly erroneous findings of fact based on its erroneous view of the law, it abused its discretion by not granting Capriati's motion to reconsider.[8]

## VI. CONCLUSION

For the foregoing reasons, we VACATE and REMAND the Contempt Order for the bankruptcy court to determine what sanctions are

---

[8] SPER requests sanctions against Capriati for filing a frivolous appeal. First, Capriati has prevailed in this appeal. In addition, we deny SPER's request because it fails to comply with Rule 8020, which requires a party to request sanctions for a frivolous appeal by separate motion. State of Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147, 1154 (9th Cir. 1996).

-23-

appropriate for SPER's willful violation of the automatic stay and perhaps willful violation of the Plan injunction.  We leave to the court's discretion as to whether any further proceedings are necessary for it to make that determination.